## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

    vs.                                                                             No. 21-CR-1578-DHU

CHRISTIAN QUINTANA,

      Defendant.

## <u>DEFENDANT'S OBJECTIONS TO THE PSR</u>

The Presentence Investigation Report (Doc. 42) (filed Aug. 9, 2023) ("PSR") overcalculates Defendant Christian Quintana's offense level ("OL") by 4, due to its erroneous application of an abduction enhancement that, as the Government has already explained, does not apply, *see* United States' Objection to the PSR (Doc. 44) (filed Aug. 23, 2023), and overcalculates his criminal-history points by 2, due to the Guidelines' elimination of the 'status points' enhancement, which has already been recognized by Probation, *see* Fourth Addendum to the PSR (Doc. 49) (filed Nov. 2, 2023).  Mr. Quintana is in fact subject to an OL of **38** (not 42), and a criminal history category ("CHC") of **II** (not III), resulting in a guideline range of **262-327 months**.

## OBJECTIONS

I.     **As the Government has already recognized, the 4-OL abduction enhancement does <u>not apply</u>.**

As used in § 2A3.1(b)(5), the term "'[a]bducted' means that a victim was *forced* to accompany an offender to a different location.  For example, a bank robber's forcing a bank teller from the bank into a getaway car would constitute an abduction."  USSG § 1B1.1 cmt'y app.

n.1(A) (emphasis added) (cited to by USSG § 2A3.1 cmt'y app. n.1).  In its response to the Government's objection, Probation effectively equates 'force' with 'doing something you don't want to do,' even if—as here—that preference is neither expressed nor obvious from the circumstances (note that this specifically refers to getting into the car with Mr. Quintana, not what followed).  *See* Addendum to the PSR at 1-2 (Doc. 45) (filed Sept. 1, 2023).  The asportation being unwanted by the victim is likely a necessary requirement, but it is not a sufficient one.

Whatever exactly "force" means—and it is true that the term "'forced to accompany,' like the term 'a different location,' [which is also in the Guidelines' definition of "abduction",] is 'to be flexible and thus susceptible of multiple interpretations, which are to be applied case by case to the particular facts under scrutiny'"—it clearly focuses on the acts of the defendant, and not *just* the desires/viewpoint of the victim.  *United States v. Hefferon*, 314 F.3d 211, 226 (5th Cir. 2002) (citation omitted).  Acting in a manner inconsistent with one's own will is not always the same as having one's will overborne.

In interpreting the § 2A3.1(b)(5) abduction enhancement, the "court[s] equate[] abduction to kidnaping," *United States v. Beith*, 407 F.3d 881, 893 (7th Cir. 2005), and "[i]n the context of kidnapping, 'there need not be physical force applied against the victim; if the victim is subdued *by the display* of potential force, that is sufficient,'" *Massachusetts v. Fredette*, 145 N.E.3d 171, 179-80 (Mass. App. 2020) (brackets omitted) (emphasis added).  But there must be a "display," or a threat, or a set of words spoken, or actions taken, designed to affirmatively overbear the victim's will.

There just isn't anything in the record to support that here.  The whole of the record on this incident is as follows:

> During a visit to Dulce in September or October just before her birthday, [Jane Doe 2] stood outside CHRISTIAN's mother's house because she did not like to be

> around CHRISTIAN or his family.  [She] was outside by herself looking at the stars.  CHRISTIAN came outside and told [her] to take a ride with him.  [She] could not refuse because she knew what would happen if she declined.  CHRISTIAN drove them up Rivertown, past the graveyard on the right, into a parking spot.

FBI Report of Interview of Jane Doe 2 (Bates No. 0958).  While it's plausible that, with further factual development, this description could be referring to an "abduction," it is insufficient as-is.  Put another way, there is nothing suggesting that the travel itself was problematic—*i.e.*, if Jane Doe's instincts had been wrong and Mr. Quintana actually ended up taking her to the grocery store, no one would say that the asportation constituted a kidnapping—and it must be under the Guidelines.

## II.     As Probation has already recognized, the 2023 amendments to the Guidelines eliminated the 'status points' enhancement.

Section 4A1.1(d) used to instruct courts to "[a]dd 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status," but that provision has been removed by the 2023 amendments.[1]  "The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced," USSG § 1B1.11(a), unless doing so "would violate the *ex post facto* clause of the United States Constitution," which of course does not apply when the new Guidelines are more defendant-favorable than the old ones, *id.* § 1B1.11(b)(1).

---

[1] More accurately, it has been replaced by a significantly more lenient status-points provision, which requires that the defendant have 7 or more criminal history points (which Mr. Quintana does not) and imparts only a single additional point, rather than two.

**CONCLUSION**

The removal of the 4-OL abduction enhancement brings Mr. Quintana's final OL to 38,[2] and his final criminal history point total to 3, which results in a CHC of II.   The guideline imprisonment range is thus 262-327 months.

Respectfully submitted,

HARRISON & HART, LLC

By: _____
     Carter B. Harrison IV
924 Park Avenue SW, Suite E
Albuquerque, NM 87102
Tel:  (505) 295-3261
Fax:  (505) 341-9340
Email:  carter@harrisonhartlaw.com

*Attorneys for the Defendant*

**This Filing Has No Exhibits**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of February 2024, I filed the foregoing Memorandum and Objections electronically via the Court's CM/ECF filing system, causing a copy of it to be served on all counsel of record.

HARRISON & HART, LLC

By:  */s/  Carter B. Harrison IV*
      Carter B. Harrison IV

---

[2] Because the Count 1 group (which has an offense level of 24) is still more than 8 Ols less serious than the Count 3 group, the Count 1 group still imparts no units and, thus, does not increase the overall OL.  *See* USSG § 3D1.4(c).